UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALISSA MARIE HAMMER,                    Civil Action No. 13-10176

    Plaintiff,                              HON. GERALD E. ROSEN
                                            U.S. District Judge
v.                                       HON. R. STEVEN WHALEN
                                            U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff ("Plaintiff") bring Malissa Marie Hammer brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

## PROCEDURAL HISTORY

On March 2, 2010, Plaintiff filed applications for DIB and SSI, alleging disability as of March 13, 2009 (Tr. 157-162). After the initial denial of the claim, she requested an

administrative hearing, held on May 16, 2011 in San Rafael, California before Administrative Law Judge ("ALJ") K. Kwon (Tr. 31). Plaintiff, represented by attorney, Diane Kwitoski, testified by video conference (Tr. 35-65). Vocational Expert ("VE") Stephen Davis also testified (Tr. 66-71). On June 15, 2011, ALJ Kwon found Plaintiff not disabled (Tr. 26). On November 14, 2012, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on January 16, 2013.

## BACKGROUND FACTS

Plaintiff, born August 5, 1979 was 31 when the ALJ issued the decision (Tr. 43, 156). She alleges disability as a result of a blood clotting disorder, a right rotator cuff tear, and herniated discs (Tr 185). She completed high school (Tr. 186) and worked previously as a clerk, assembler, receptionist, sales clerk, and waitress (Tr. 187). Her application states that she stopped working on March 13, 2009 when she was "laid off" (Tr. 186).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff was single and had two children, a daughter, 11, and son, three (Tr. 35). They recently moved from her parents' house to an apartment (Tr. 35). At the time of the claimed March, 2009 disability onset, Plaintiff and her children were living with Plaintiff's grandmother (Tr. 36).

Before being terminated in March, 2009, Plaintiff worked for five years in "order entry and sales" (Tr. 37). She was laid off because she missed a lot of work (Tr. 37). She estimated that in the first three months of 2009, she missed work at least once a week (Tr.

38). She collected unemployment benefits from March, 2009 to February, 2011, during which time, she was looking for other jobs (Tr. 38). She searched for jobs through a state sponsored job agency, online, and in person (Tr 38-39). Her treating physician, Richard LaBaere, II, D.O. opined that she was unable to fill some of the potential job positions and excused her from classes she was required to take in exchange for state financial assistance (Tr. 38).

Plaintiff reported that she received treatment from Dr. LaBaere about once every two months (Tr. 43). Dr. LaBaere had not referred her to medical specialist, but had once referred her to a physical therapist (Tr. 44). The physical therapy stint had not helped her back or shoulder pain (Tr. 44). In addition to back problems, she had consistently low blood platelet counts characterized by frequent bruising, right shoulder problems, depression, anemia, and fatigue (Tr. 45). She received treatment from Dr. LaBaere for all of her conditions (Tr. 45). She had been planning to see a specialist for the right shoulder problems, but was prevented by her lack of health insurance (Tr. 46).

On a typical day, Plaintiff would arise at 6:00 or 7:00 a.m. to prepare her children for school (Tr. 48). After her children left, she would sleep for two hours, then make lunch, and interact with her son (Tr. 49). Their activities including watching movies and going to the park (Tr. 49). She was unable to push her son's swing due to hand numbness (Tr. 49). She drove twice a week but was unable to drive for more than short distances (Tr. 50). Her boyfriend and daughter did most of the housework (Tr. 50). Her condition had worsened in the last few years (Tr. 51). She required help dressing and bathing (Tr. 52). She did not

-3-

share the full extent of her physical limitations with Dr. LaBaere (Tr. 53). She smoked two cigarettes a day and took Methadone (Tr. 54). Methadone created the side effects of drowsiness (Tr. 55).

In response to questioning by her attorney, Plaintiff reported that her blood platelet condition had steadily worsened since the diagnosis 13 years earlier (Tr. 55). She required a transfusion after the birth of her son in 2007 but had not received subsequent transfusions (Tr. 56-57). The condition created anemia (Tr. 56). She had been told that transfusions would improve her condition only temporarily (Tr. 57). Hand, back, and shoulder pain contributed to her inability to continue working (Tr. 58-59). Her employer had deliberately terminated her employment in March, 2009 to allow her to apply for disability benefits (Tr. 57-58). She was able to engage in a variety of activities but required frequent breaks due to fatigue (Tr. 59). Methadone created concentrational problems (Tr. 61). She also experienced endometriosis causing cramps and heavy periods (Tr. 62). Back surgery had been considered, then ruled out due to the platelet condition (Tr. 63).

### B. Medical Evidence

May, 2007 hospital records show that Plaintiff was diagnosed with anemia in the third trimester of a pregnancy (Tr. 274-275). She received a "two unit blood transfusion" (Tr.

276). The same month, hematologist Roger L. Black, D.O. noted a diagnosis of thrombocytopenia (Tr. 278). He noted that Plaintiff's hemoglobin levels had increased since the hospitalization (Tr. 278). A November, 2008 MRI of the thoracic spine showed only mild sac impression with mild to moderately compromised marrow signal, possibly attributable to anemia (Tr. 423). An MRI of the lumbar spine was negative for nerve root compression (Tr. 424). An MRI of the cervical spine showed "minimal disc bulging at C5-C6 (Tr. 425). An MRI of the brain was also unremarkable (Tr. 426).

In January, 2009, Plaintiff received a prescription for Vicodin from Genesys Regional Medical Center after complaining of chest discomfort and a cough (Tr. 334). She was given a two-day work release (Tr. 338). A March, 2009 colonoscopy was negative for abnormalities (Tr. 324) Dr. LaBaere noted on March 5, 2009 that Plaintiff reported good results from osteopathic manipulative therapy (Tr. 367). Dr. LaBaere's records also show that a pregnancy test was negative (Tr. 380). In April, 2009, Dr. LaBaere's records state that Plaintiff sought treatment for a possible toe infection (Tr. 366). He noted that Plaintiff exhibited an improved range of cervical and thoracic spine motion (Tr. 366). In July, 2009, Dr. LaBaere noted Plaintiff's reports of anxiety (Tr. 359). In August, 2009, rehabilitative specialist Heidi J. Haapala, M.D. noted Plaintiff's reports of radiating low back pain (Tr. 279). Plaintiff denied lower extremity numbness (Tr. 279). She reported that she had been unemployed since being laid off in March, 2009 (Tr. 279). She admitted to smoking a pack of cigarettes a day (Tr. 279). Dr. Haapala noted that a February, 2009 study of the upper extremities was normal (Tr. 279). Plaintiff exhibited full strength in all extremities but some

tenderness over the sacroiliac joints (Tr. 280). Dr. Haapala recommended manual physical therapy, noting that although "occupational therapy, exercise physiology, and pain psychology" would be helpful, no programs were available in Plaintiff's area (Tr. 280, 288). The same month, Dr. LaBaere noted Plaintiff's reports of situational stressors and depression (Tr. 350, 358). He observed that Plaintiff walked with a limp but exhibited full muscle strength (Tr. 350).

The following month, Christopher D. Tykocki, D.O. noted a diagnosis of endometriosis (Tr. 300, 328). A physical examination was otherwise normal (Tr. 301). Dr. LaBaere's October, 2009 note state that the lower extremities were "neurovascularly intact" (Tr 354). Dr. LaBaere's November, 2009 notes state that Plaintiff's current living situation was "very stressful" (Tr. 353).

A January, 2010 nerve conduction study of the right upper extremity following Plaintiff's report of discomfort was consistent with "mild" Carpal Tunnel Syndrome ("CTS") (Tr. 294, 385, 348, 427). An x-ray of the right shoulder was unremarkable (Tr. 321, 384). The same month, Dr. LaBaere observed that Plaintiff had a "chronic low platelet count" (Tr. 351). Plaintiff underwent a hysteroscopy with dilation and curettage in February, 2010 (Tr. 314, 322). In March, 2010, Dr. LaBaere recommended physical therapy for CTS (Tr. 344). He remarked the following month that Plaintiff's low back pain was of "unknown etiology" (Tr. 415). He noted that Plaintiff had been seen by "multiple specialists" (Tr. 415). In June, 2009, Plaintiff sought treatment after being hit in the shin at her daughter's softball game (Tr. 413). In August, 2010, Plaintiff reported knee pain after "going up and down stairs a lot" (Tr

409). Dr. LaBaere recommended the use of an Ace bandage (Tr 409).

Dr. LaBaere's September, 2010 notes state that Plaintiff sought treatment for itchy toes (Tr. 406). She reported a limited range of cervical motion and anxiety regarding her daughter's school problems (Tr. 406-407). In November, 2010, Plaintiff reported renewed neck and back pain after raking leaves (Tr. 404). Dr. LaBaere observed full muscle strength in the lower extremities but tension over the lumbar and paravertabral muscles (Tr. 404). The same month, Dr. LaBaere completed a "physical capacities evaluation," finding that Plaintiff was able to lift up to 20 pounds on an occasional basis and up to five pounds frequently (T. 401). He found that Plaintiff required a 10-minute rest period each hour and was unable to push or pull on a sustained basis (Tr. 402). He did not find it necessary for Plaintiff to recline during the working day (Tr. 402). Dr. LaBaere's treating notes from the same month state that Plaintiff would benefit from stretching and strengthening exercises (Tr. 403).

In May, 2011, Dr. LaBaere completed a second evaluation on behalf of Plaintiff's disability claim, finding that she could lift between five and 20 pounds on an occasional basis (Tr. 419). He found the absence of manipulative limitations (Tr. 419). He found that Plaintiff required a 10-minute rest period each hour and was unable to push or pull on a sustained basis (Tr. 420).

### C. Vocational Expert Testimony

VE Stephen Davis classified Plaintiff's former jobs as an order clerk, sales associate,

waitress, and shipping and receiving clerk as exertionally sedentary to medium,[1] and performed at Specific Vocational Preparation ("SVP") levels 3 to 5[2] (Tr. 66-67). The ALJ then described a hypothetical individual, taking into account Plaintiff's age, education and work experience:

> [A]ssume an individual . . . with an ability to perform no more than light work. This individual needs a sit/stand option at will and can only occasionally climb, balance, stoop, kneel, crouch and crawl. Never any ropes and never any scaffolds. And the job must be very simple and routine and unskilled in nature. (Tr. 68).

The VE testified that given the above limitations, the hypothetical individual would be unable to return to Plaintiff's past relevant work, but could perform the light, unskilled work of a "table worker" (33,000 positions in the State of Michigan); electronics assembler, sedentary/unskilled (3,100); assembler, sedentary/unskilled (29,000); and table worker,

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[2] SVP measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http://www.lb7.uscourts.gov/documents/INSD/08-1621.pdf (last visited on February 18, 2014). "[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." SSR 00–04p.

sedentary/unskilled (40,000) (Tr. 68-69). She indicated that the job numbers for the first two jobs would be reduced by 15 percent due to the inclusion of a sit/stand option (Tr. 68). The VE stated that if the same individual required 10-minute breaks each hour, all unskilled work would be precluded (Tr. 69). The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 70). In response to questioning by Plaintiff's counsel, the VE testified that the inability to sit, stand, or walk for more than four hours in an eight-hour work day or, the need to miss at least two days a month on a consistent basis would preclude all unskilled work (Tr. 70).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "degenerative disk disease with back pain, depressive disorder and low blood platelets" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-20). The ALJ found mild restrictions in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, or pace (Tr. 20). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [S]he requires a sit stand option, can only perform occasional posturals (climb, balance, stoop, kneel, crouch, crawl; never climb ropes and scaffolds); the work must also be simple, routine, and unskilled (Tr. 21).

The ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could perform the work of a table worker and electrical equipment assembler (Tr. 25).

The ALJ discounted Plaintiff's allegations of limitations by noting that she had not received aggressive treatment for the blood platelet condition since May, 2007 (Tr. 21). The ALJ observed that Plaintiff reported in her application for benefits that she stopped working because she was "laid off" rather than as a result of a medical condition (Tr. 21, 186). The ALJ noted that Plaintiff collected unemployment benefits and continued to look for work between March, 2009 and February, 2011 (Tr. 21). Citing the treating records from March, 2009 forward, the ALJ observed that Plaintiff obtained generally good results from conservative treatment (Tr. 22). She cited Dr. Haapala's August, 2009 observation of a good range of lumbar motion and full strength in all extremities (Tr. 22).

The ALJ discounted Dr. Labaere's November, 2010 and May, 2011 assessments, noting that the objective study results, use of conservative modalities, and Dr. Labaere's own treating records were "sharply out of proportion" to the limitations found in the assessments (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Treating Physician Analysis

Plaintiff disputes the ALJ's rejection of Dr. LaBaere's November, 2010 and May, 2011 assessments. *Plaintiff's Brief* at 10-16, *Docket #15* (citing Tr. 24, 401-402, 419-420). She also argues that the ALJ did not provide "good reasons" for the rejection as required by 20 C.F.R. § 404.1527(c)(2). *Id.* Plaintiff argues that because the medical records do not contain a residual functional assessment contradicting Dr. LaBaere's November, 2010 and May, 2011 disability opinions, the treating physician's opinion must be adopted. *Plaintiff's Brief* at 12-13. She contends that the ALJ "play[ed] doctor" by creating an RFC unsupported by the record. *Id.* at 13.

### 1. Applicable Law

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ

> must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6)).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)(citing *Wilson,* at 544-446). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

### 2. Application to the Present Case

In regard to Dr. LaBaere's November, 2010 and May, 2011 opinion that Plaintiff was unable to sit, stand, and walk for a total of more than four hours in an eight-hour work day and required 10-minute breaks each hour, the ALJ found as follows:

> Review of Dr. LaBaere's treatment records . . . shows unremarkable findings both clinically and diagnostically and reveal comments that are sharply out of proportion to the significant limitations endorsed in his RFC form. For example, the . . . treatment notes reflect that the claimant is stable and responding to medications as discussed in greater detail *supra.* While the claimant has certainly complained of chronic back pain, the conservative nature of her treatment overall with home exercise, stretching and body

mechanic and posture, along with medications that are noted to be effective without the need to increase dosages fail to support or warrant greater restrictions to her residual functional capacity. Hence, Dr. LaBaere's medical source statement is, accordingly, given limited weight (Tr. 24).

In rejecting Dr. LaBaere's opinion, the ALJ referred to her previous discussion of the treating records including MRIs showing essentially mild back problems (Tr. 22, 423-425). The ALJ reasonably concluded that Plaintiff's temporary situational stressors such as housing and relationship problems contributed to her psychological limitations (Tr. 22). The ALJ also noted that the bulk of Dr. LaBaere's treating records referred to "short-lived situational complaints" such as hurting her shin at a softball game, and soreness after raking (Tr. 22). The ALJ noted that Plaintiff's treating and examining sources uniformly recommended conservative treatment (Tr. 22).

Plaintiff's argument that the ALJ was obliged to adopt Dr. LaBaere's assessment in the absence of contradicting functional assessment by another source is not well taken. The applicable regulation does not state that the rejection of a treating source assessment must be supported by a functional assessment by another source, but rather, that "good reasons," supported by the record, be provided for the rejection. § 404.1527(c)(2). As discussed above, the ALJ correctly noted that Dr. LaBaere's assessment was undermined by his own observations, other treating records, and the objective studies (Tr. 24). Plaintiff argues that she was limited to conservative treatment because of her platelet condition. *Plaintiff's Brief* at 15. However, Dr. Haapala's August, 2009 assessment, stating that "no injections are recommended . . . especially given [Plaintiff's] platelet condition," indicates that steroid

-14-

injections had been ruled out on grounds that her condition did not warrant injections, as well as the platelet condition (Tr. 280). While Plaintiff argues that the lack of additional treatment was foreclosed by her financial limitations, the records indicate that she underwent surgery for a uterine condition and received treatment for a number of minor conditions during the relevant period.

  This Court's review of the record also supports the ALJ's findings. Plaintiff admitted that she stopped working in March, 2009 because she was "laid off" (Tr. 186). Plaintiff's later claim that she became "disabled" on that date is undermined by records from the same month showing that she received "good results" from manipulative therapy and the dearth of treating records showing a downturn in her condition (Tr 367). Plaintiff's testimony that she was missing between one and two days of work *each week* in the last three months of her employment contradicts her former employer's statement that she missed six-and-a-half days of work in 90 days (Tr. 38, 264). The medical records show that at least two of those absence days were attributable to a chest cold rather than the conditions forming the basis of the disability claim (Tr. 338). While Plaintiff counsel suggested at the administrative level that Plaintiff's employer terminated her in a manner that would allow her to pursue a disability claim, Plaintiff did not file a claim for benefits until one year after being terminated (Tr. 41). Further, imaging studies taken in the months preceding the alleged onset of disability show only mild abnormalities (Tr 423-425) and are consistent with Dr. LaBaere's April, 2010 comment that the lower back pain was of "unknown etiology" (Tr. 415). Dr. LaBaere's treating records show that Plaintiff exhibited full strength in the lower extremities (Tr. 350,

-15-

404). These records support, rather than undermine, the ALJ's conclusion that Plaintiff was capable of light work with a sit/stand option.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's conditions or personal challenges. Nonetheless, the ALJ's determination that Plaintiff could perform a significant range of light work with a sit/stand option was well within the "zone of choice" accorded the administrative fact-finder and as such, should remain undisturbed. *Mullen, supra.*

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further fact-finding and Defendant's motion be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 24, 2014                s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 24, 2014, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager to the
                                        Honorable R. Steven Whalen